2 So.3d 869 (2008)
R.W.
v.
G.W. and S.W.
2070540.
Court of Civil Appeals of Alabama.
July 3, 2008.
Shaunathan C. Bell, Fort Payne, for appellant.
*870 Daniel S. Campbell, Fort Payne, for appellees.
THOMAS, Judge.
R.W. ("the mother") is the mother of L.M.W. III and B.W. (sometimes hereinafter referred to collectively as "the children"). The DeKalb Juvenile Court terminated the mother's parental rights to the children on July 3, 2007. She timely appealed to the DeKalb Circuit Court. After an unexplained delay, the DeKalb Circuit Court ordered the DeKalb Juvenile Court to review the record and to determine whether it was adequate to support an appeal to this court pursuant to Rule 28, Ala. R. Juv. P. The DeKalb Juvenile Court certified the record as adequate, and the DeKalb Circuit Court transferred the appeal to this court.
The record reveals that the mother lost custody of both children as a result of her involvement with the Catoosa, Georgia, Department of Family and Children Services ("DFCS"). In April 2005, the Juvenile Court of Catoosa County, Georgia ("the Georgia Court"), awarded "permanent custody" of B.W. to L.E.W. and J.W. ("the paternal grandparents"). The judgment awarding the paternal grandparents permanent custody of B.W. stated that reunification with his parents was not the permanency plan for B.W. and that the parents were in agreement with the transfer of custody to the paternal grandparents. According to the judgment, the mother was awarded visitation with B.W., as agreed between her and the paternal grandparents. The judgment further provided that the court would review the case every 3 years until the child reached the age of 18.
In May 2005, the Georgia court awarded G.W. ("the paternal great-aunt") and her husband, S.W., "temporary custody" of L.M.W. III. According to the judgment awarding the paternal great-aunt and her husband custody of L.M.W. III, the permanency plan for L.M.W. III was reunification with his parents. The judgment listed two requirements for reunification: that the mother obtain and maintain stable housing and that she become and remain drug free. The mother was awarded visitation "as agreed to between the custodians and the [mother]." The judgment further stated that it "shall expire on April 8, 2007, unless sooner terminated" by the court.
According to the paternal great-aunt, who testified at the trial in the DeKalb Juvenile Court, in June 2005 the paternal grandmother became ill and B.W. came to live with the paternal great-aunt. When the paternal grandmother recovered from her illness, however, B.W. expressed a desire to continue to live with the paternal great-aunt and L.M.W. III. The paternal grandmother permitted B.W. to remain in the paternal great-aunt's custody.
In the spring of 2005, when the paternal great-aunt sought custody of L.M.W. III, who was then in the custody DFCS she and her husband had relocated to Georgia. However, according to the paternal great-aunt, a few months after receiving custody of L.M.W. III, she and her husband decided that they could no longer live in Georgia and they notified "the courts in Georgia" that they would be moving back to Alabama. The paternal great-aunt testified that "they said that was fine."
In July 2006, the paternal great-aunt and her husband filed in the DeKalb Juvenile Court what they styled as a "Petition to Domesticate and Modify" the judgment of the Georgia court regarding L.M.W. III and a separate "Petition to Domesticate and Modify" the judgment of the Georgia court regarding B.W. The paternal grandparents filed in the DeKalb Juvenile Court a "Consent to Relinquishment of Custody," *871 in which they consented to an award of the custody of B.W. to the paternal great-aunt and her husband.
On August 4, 2006, the paternal great-aunt and her husband filed a petition to terminate the rights of the mother[1] in the DeKalb Juvenile Court. After the mother was served, she filed an affidavit of substantial hardship and requested to be appointed counsel. The DeKalb Juvenile Court appointed counsel for the mother on October 10, 2006, and counsel filed an answer on November 20, 2006.
The mother filed a motion to dismiss on March 15, 2007, raising as grounds the lack of in personam jurisdiction over the mother and the lack of subject-matter jurisdiction. After a hearing on the motion before the commencement of the termination trial, the DeKalb Juvenile Court denied the motion to dismiss because, it said, the presence of the children in the State of Alabama was a sufficient basis for jurisdiction over the mother. As noted above, the DeKalb Juvenile Court ultimately terminated the mother's parental rights, and she appeals, arguing only that the DeKalb Juvenile Court did not have in personam jurisdiction over her.
However, because this court may notice the lack of subject-matter jurisdiction ex mero motu and because the lack of subject-matter jurisdiction renders a judgment entered without it void, see Ex parte Punturo, 928 So.2d 1030, 1033 (Ala.2002), and C.J.L. v. M.W.B., 868 So.2d 451, 452 (Ala.Civ.App.2003), we will consider whether the DeKalb Juvenile Court had subject-matter jurisdiction to entertain the paternal great-aunt's petitions to modify the existing custody determinations of the Georgia court or the petition to terminate the mother's parental rights.
"Congress and most state legislatures have passed legislation aimed at determining which of multiple states should litigate and modify child-custody determinations, namely, the Parental Kidnapping Prevention Act (`the PKPA'), 28 U.S.C. § 1738A, and [the Uniform Child Custody Jurisdiction and Enforcement Act,] Ala.Code 1975, § 30-3B-101 et seq. The PKPA states that continuing jurisdiction remains in a state that has made a child-custody determination provided that the state continues to have jurisdiction under the state's laws and the child or at least one `contestant' resides in that state. 28 U.S.C. § 1738A(d); see also Holloway v. Holloway, 519 So.2d 531, 532 (Ala.Civ.App. 1987)."
C.J.L., 868 So.2d at 452.
As we have previously explained, the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), codified at Ala.Code 1975, § 30-3B-101 et seq., controls decisions regarding whether a court of this state has jurisdiction to make a child-custody determination or to modify another state's child-custody determination. M.J.P. v. K.H., 923 So.2d 1114, 1116-17 (Ala.Civ.App.2005). A "child-custody determination," as defined in the UCCJEA, includes any judgment providing for the legal or physical custody of a child or providing visitation with a child. § 30-3B-102(3). A "child-custody proceeding" is defined in the UCCJEA to include not only divorce actions involving the custody of a child, but also "neglect, ... dependency,... [and] termination of parental rights" actions in which the issue of child custody is addressed. § 30-3B-102(4).

*872 "Section 30-3B-201 of the UCCJEA outlines when a court of this state has jurisdiction to make an initial custody determination:
"`(a) Except as otherwise provided in Section 30-3B-204, a court of this state has jurisdiction to make an initial child custody determination only if:
"`(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
"`(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
"`a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
"`b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
"`(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
"`(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).'
". . . .
"The UCCJEA provides that a court of this state has jurisdiction to modify a custody determination of another state only if the Alabama court has jurisdiction to make an initial determination under § 30-3B-201(a)(1) or (2) and
"`(1) The court of the other state determines that it no longer has continuing, exclusive jurisdiction under Section 30-3B-202 or that a court of this state would be a more convenient forum under Section 30-3B-207; or
"`(2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.'
"Ala.Code 1975, § 30-3B-203."
M.J.P., 923 So.2d at 1116-17.
Georgia has also enacted the UCCJEA. See Ga.Code Ann. § 19-9-40 et seq. (2001). The provisions governing initial child-custody jurisdiction, Ga.Code Ann. § 19-9-61, and exclusive, continuing jurisdiction, Ga. Code Ann. § 19-9-62, are identical to the corresponding provisions of Alabama's UCCJEA, i.e., § 30-3B-201 and § 30-3B-202, respectively. Thus, because the children, the paternal great-aunt, the paternal grandmother, and the mother all resided in Georgia at the time of the initial child-custody determinations, Georgia was the home state of the children and had jurisdiction to make the initial child-custody determinations. Because the mother still resides in Georgia, based on Ga.Code Ann. § 19-9-62(a)(1), the Georgia court would have exclusive, continuing jurisdiction over the initial child-custody determinations until it determined that "neither the child nor the child's parents or any person acting as a parent has a significant connection with this state and that substantial evidence is no longer available in this state concerning *873 the child's care, protection, training, and personal relationships." Nothing in the record reflects that the Georgia court has made such a determination.
Furthermore, the paternal great-aunt's attempt to "domesticate" the Georgia court's custody judgments was likely an incomplete attempt to "register" the child-custody determinations, which may be done pursuant to § 30-3B-305(a).[2] Even if the registration had been properly performed, pursuant to § 30-3B-306(b), "[a] court of this state shall recognize and enforce, but may not modify, except in accordance with Article 2 [§ 30-3B-201 through § 30-3B-210], a registered child custody determination of a court of another state."
Based on our reading of the UCCJEA provisions governing child-custody determinations both in Alabama and in Georgia, we cannot agree that the DeKalb Juvenile Court had subject-matter jurisdiction to entertain the paternal great-aunt's petitions to modify the Georgia court's judgments regarding custody of the children or the petition to terminate the parental rights of the mother, which would serve as a child-custody determination contrary to those judgments entered by the Georgia court and over which the Georgia court maintains exclusive, continuing jurisdiction. The judgment of DeKalb Juvenile Court was entered without subject-matter jurisdiction and is void. See Ex parte Punturo, 928 So.2d at 1035. A void judgment will not support an appeal. C.J.L., 868 So.2d at 454.
APPEAL DISMISSED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
NOTES
[1] That petition also sought to terminate the parental rights of L.M.W. II ("the father"); the father never appeared in the termination action, and his rights were terminated by default. He did not appeal.
[2] Section 30-3B-305 sets out the requirements for registration of a child-custody determination of another state:

"(a) A child custody determination issued by a court of another state may be registered in this state, with or without a simultaneous request for enforcement, by sending to the appropriate court in this state:
"(1) A letter or other document requesting registration;
"(2) Two copies, including one certified copy, of the determination sought to be registered, and a statement under penalty of perjury that to the best of the knowledge and belief of the person seeking registration the order has not been modified; and
"(3) Except as otherwise provided in Section 30-3B-209, the name and address of the person seeking registration and any parent or person acting as a parent who has been awarded custody or visitation in the child custody determination sought to be registered."